**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

|   |   |   |
|---|---|---|

\*

**BARBARA A. GIBBS, *et al*,**

    **Plaintiffs,**

**v.**

**BANK OF AMERICA, N.A., *et al*,**

    **Defendants.**

**Case No.: GJH-16-2855**

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

This removal action stems from *pro se* Plaintiffs Barbara A. Gibbs and Melvin E. Gibbs'

claims against Defendants Bank of America, N.A. ("Bank of America"), Nationstar Mortgage

("Nationstar"); Urban Settlement Services, d/b/a Urban Lending Solutions ("Urban"); Jeffrey

Nadel, Esq.; Atlantic Law Group, LLC ("Atlantic Law Group"); Montgomery Village

Foundation, Inc. ("Montgomery Village Foundation"); Maryland Attorney General Brian E.

Frosh; South Carolina State Judge Cynthia Graham Howe and South Carolina Attorney General

Alan McCroy Wilson (hereinafter, the "South Carolina Defendants") and four unnamed

defendants ("DOES 6-10"), regarding Plaintiffs' unsuccessful attempts to receive loan

modifications on their mortgages. Dispositive motions are pending before the Court on behalf of

all of the named defendants in this case: Defendant Frosh's Motion to Dismiss, ECF No. 10;

Defendants Bank of America and Nationstar's Motion to Dismiss, ECF No. 13; Defendant

Nadel's Motion to Dismiss, ECF No. 17; Montgomery Village Foundation's Motion to Dismiss,

ECF No. 25; Defendant Urban's Motion to Dismiss, ECF No. 31; the South Carolina

Defendants' Motion to Dismiss, ECF No. 57; and Defendant Atlantic Law Group's Motion to

Dismiss, ECF No. 66. Plaintiffs have filed a myriad of motions which the Court will also consider at this time: Plaintiffs' Motion for Summary Judgment, ECF No. 39; Plaintiffs' Motion for Clerk's Entry of Default as to Defendant Atlantic Law Group, ECF No. 48; Plaintiffs' Motion for Sanctions Against All Defendants, ECF Nos. 53, 70 and 74; Plaintiffs' Motion for Leave to File a Second Amended Complaint, ECF No. 60; Plaintiffs' Motion for Clerk's Entry of Default as to unspecified Defendants, ECF No. 65; and Plaintiffs' Motion for Clerk's Entry of Default as to Bank of America, Nationstar, Nadel, Atlantic Law Group, the South Carolina Defendants and the Attorney General of Maryland, ECF No. 71. A hearing is unnecessary. Loc. R. 105.6 (D. Md. 2016). For the reasons stated below, the Court will grant all of Defendants' pending motions to dismiss and deny Plaintiffs' motions.

## I.    BACKGROUND[1]

Between 2005 and 2006, Plaintiffs purchased two homes, one in Florence, South Carolina and one in Gaithersburg, Maryland. ECF No. 2 ¶ 50. Plaintiffs state that they "financed the building of their South Carolina home with a one year construction loan[,] purchased with a 30-year fixed rate mortgage from [Bank of America.]." *Id.* Plaintiffs further state that the South Carolina home was their primary residence until 2011, when they moved to Maryland so that Mr. Gibbs could receive cancer treatment at Johns Hopkins Hospital in Baltimore, Maryland. *Id.* ¶¶ 50, 59. They proffer no additional facts regarding the existence of a mortgage for their Maryland home. However, the judge in a prior, almost identical case that Plaintiffs brought in the District of Colorado stated that "it is clear that *both* of the Plaintiffs' mortgages were with [Bank of America]." *See Gibbs-Squires v. Urban Settlement Servs.*, No. 14-CV-00488-MSK-CBS, 2015

---

[1] While Plaintiffs frame a portion of their allegations as a proposed class action, a *pro se* plaintiff may not maintain a class action case. *See Tresvant v. Oliver*, No. CIV.A. DKC 12-0406, 2013 WL 598333, at *4, (D. Md. Feb. 15, 2013) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975)). Thus, such claims, *see* ECF No. 2 ¶¶ 24-48, will not be considered by the Court.

WL 196217, at *9 n.12 (D. Colo. Jan. 14, 2015), *aff'd*, 623 F. App'x 917 (10th Cir. 2015) (emphasis in the original) (hereinafter, "the *Colorado Action*").[2]

Beginning in May of 2008, Plaintiffs sought loan modifications from Bank of America.[3] ECF No. 2 ¶ 53. Bank of America initially approved Plaintiffs' request for loan modifications, conditioned upon their payment of $30,000 in closing costs. *Id.* Plaintiffs declined the loan modifications because any savings from a reduction in their monthly mortgage payments would be erased by the new requirement to pay closing costs. *Id.* Plaintiffs continued, unsuccessfully, to request alternative loan modifications from Bank of America until 2012. *Id.* ¶¶ 55-70. At that point, they were informed by Bank of America that their mortgages had been sold to Nationstar. *Id.* ¶ 70. Although Plaintiffs state that they "made all of their mortgage payments in full and on time," *id.* ¶ 50, this contention is contradicted by their filings in the *Colorado Action*, where they stated that "[i]n or about November 2009, after being totally frustrated with [Bank of America], Mr. Gibbs returned to South Carolina; we stopped paying the mortgage and have not paid the mortgage in five (5) years." *Colorado Action*, 2015 WL 196217, at *9.[4]

Plaintiffs complain about their treatment by Bank of America employees while they sought loan modifications, stating that they were repeatedly misled about their qualifications for a federal program known as the Home Affordable Modification Program ("HAMP"), which aims to provide mortgage modifications to eligible borrowers facing foreclosure, and were often told

---

[2] While Defendant Bank of America never affirmatively states that it owned both mortgages, neither does it dispute this contention.

[3] Again, Plaintiffs do not specify whether they sought to modify their South Carolina mortgage, their Maryland mortgage, or both. However, based on the judge in the *Colorado Action's* statement that both mortgages were with Bank of America, Plaintiffs' statement in the *Colorado Action* that they sought to have "both home mortgages modified," and Plaintiffs' reference to seeking "loan modifications," plural rather than singular, from Bank of America in this case, the Court assumes that Plaintiffs sought to modify both loans. *See Colorado Action,* 2015 WL 196217, at * 9 n.12.

[4] It is unclear whether Plaintiffs meant that they stopped paying their South Carolina mortgage or their Maryland mortgage. *See Colorado Action,* 2015 WL 196217, at * 9 n.12.

3

to resubmit documents that they had already submitted. *Id.* ¶¶ 5-6, 50-73.[5] These allegations are repeated, almost word for word, from the allegations in Plaintiffs' *Colorado Action* complaint, which focused on Plaintiffs' request for a loan modification regarding the South Carolina property. *Compare* ECF No. 1 ¶¶ 50-73, *with Colorado Action*, 2015 WL 196217, at Dkt. No. 1 ¶¶ 109-131.[6]

These allegations serve as the basis for what Plaintiffs describe as a violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c), in which Bank of America, Nationstar, Urban and other known and unknown defendants, conspired to defeat the purpose of the HAMP program by misleading and deceiving borrowers. ECF No. 2 ¶¶ 2, 5-6, 9-13; *see also id.* ¶¶ 77-98. According to Plaintiffs, Bank of America and its co-conspirators "serially strung out, delayed and otherwise hindered the modification processes that it agreed to facilitate," resulting in otherwise qualified homeowners becoming unable to participate in the program. *Id.* ¶¶ 4-5. Plaintiffs allege that Bank of America directed Nationstar and Urban to acquire mortgages of HAMP applicants and foreclose on their homes. *Id.* ¶¶ 7, 25-46. They further assert that Bank of America, Nationstar, Urban, and their other co-conspirators, fraudulently claimed that key documents relating to HAMP modifications were never received and lied to homeowners who were in the process of applying for HAMP modifications. *Id.* ¶ 9.

Plaintiffs also allege that Bank of America directed Defendants Nadel, Atlantic Law Group and Montgomery Village Foundation, to file frivolous lawsuits against them, with the goal of "stealing" their homes. *Id.* ¶ 24.[7] They further allege that the Maryland Attorney General

---

[5] In the section titled "class action," Plaintiffs also include general allegations regarding other Bank of America employees, along with Nationstar and Urban employees, but do not provide any details regarding their own personal interaction with the individuals named. *Id.* ¶¶ 26-46.

[6] Dkt. No. 1 refers to the *Colorado Action* complaint, incorporated by reference into the *Colorado Action* amended complaint.

[7] Plaintiffs do not provide any information regarding the roles of these Defendants. For the reader's convenience, the Court makes the following observations of their roles based on the uncontested statements in Defendants' briefs.

entered into a consent agreement with Bank of America, agreeing to turn a "Blind Eye to [Bank of America's] continued conspiracy and racketeering in defrauding HAMP" in return for receiving money from the bank. *Id.* ¶ 24. Finally, Plaintiffs claim that Defendants have "paid bribes to South Carolina government employees to institute and maintain their illegal foreclosure practices." *Id.* ¶ 107.

Together with their RICO claim, Plaintiffs bring seven additional claims against the Defendants, who they often refer to generally as "Defendants" or the "HAMP-less gang." *Id.* ¶ 23. First, they allege state law claims of breach of contract, unjust enrichment, conspiracy and violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101, *et seq. Id.* ¶¶ 49-73, 99-109.[8] Plaintiffs also allege violations of three federal civil rights statutes, 42 U.S.C. §§ 1983, 1985 and 1986, claiming that Defendants' "illegal actions were instituted against Plaintiffs based on their RACE: BLACK." *Id.* ¶ 108.

On March 26, 2015, Nadel, on behalf of Nationstar, instituted foreclosure proceedings against Plaintiffs regarding the Maryland property. *See Nadel* Action, Case No. 402900V, at Dkt. No. 1. On June 2, 2015, Plaintiffs filed a counter-claim in that case, *id.,* at Dkt. No.12, which was separated from the foreclosure case and became the initial complaint in a new case. *See Gibbs v. Bank of America, N.A.,* Case No. 405624V (Mont. Co. Cir. Ct. 2015), Dkt. No 1 (hereinafter, the

---

Jeffrey Nadel was counsel for Nationstar in the foreclosure proceedings for the Maryland property. *See* ECF No. 13-1 at 5; *see also Nadel v. Gibbs,* Case No. 402900V (Mont. Co. Cir. Ct. 2015) (hereinafter, the "*Nadel* Action"). Atlantic Law Group was foreclosure counsel for Wells Fargo, who purchased the Maryland property at the foreclosure sale. *See Nadel Action,* Case No. 402900V, at Dkt. No. 39; *see also* ECF No. 66-1 at 1-2. Montgomery Village Foundation notes that their "limited interaction with the Gibbs has been to take legal action...to collect unpaid assessments from [Plaintiff] Barbara Gibbs, owed to [Defendant] pursuant to a Declaration of Covenants governing [the Maryland property]." ECF No. 25-1 at 2.

[8]While Plaintiffs also allege a violation of the "Implied Covenant of Good Faith and Fair Dealing," Maryland does not recognize this as an independent cause of action. *See Cutler v. Wal-Mart Stores, Inc.,* 175 Md. App. 177, 195 (Md. Ct. Spec. App. 2007). Thus, their claim is dismissed. Similarly, in what is labelled "Count VII," Plaintiffs request that Defendants be "estopped from relying on any statute of limitation defense." ECF No. 2 ¶¶ 75-76. As these comments represent arguments against Defendants' potential use of an affirmative defense and do not state a cognizable claim for relief, they will not be considered by the Court at this time.

"*Gibbs* Action").[9] On August 12, 2016, Defendants Bank of America and Nationstar removed the *Gibbs* Action to this Court. ECF No. 1.

After removal, each of the named Defendants filed a motion to dismiss, arguing that Plaintiffs' claims were barred on multiple grounds including *res judicata*, lack of subject matter jurisdiction, improper venue, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted. *See* ECF Nos. 10, 13, 17, 25, 31, 57, and 66. Plaintiffs responded to Defendants' motions via two omnibus Responses in Opposition, along with separate Responses to the South Carolina Defendants and Defendant Atlantic Law Group's motions, purporting to address the arguments of the Defendants, but instead mainly reiterating the conclusory allegations from their Amended Complaint. *See* ECF Nos. 20, 38, 62 and 69. Plaintiffs have also filed their own motions, including a Motion for Summary Judgment on all claims, ECF No. 39; Motion for Clerk's Entry of Default as to Defendant Atlantic Law Group, ECF No. 48; Motion for Sanctions Against All Defendants, ECF Nos. 53, 70 and 74; Motion for Leave to File a Second Amended Complaint, ECF No. 60; Motion for Clerk's Entry of Default as to unspecified Defendants, ECF No. 65; and Motion for Clerk's Entry of Default as to All Defendants, ECF No. 71.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss invoking Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[9] The Maryland state court dockets for the *Gibbs* and *Nadel* Actions can be accessed at
http://casesearch.courts.state.md.us (last visited March 28, 2017).

misconduct alleged." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555) ("a Plaintiffs' obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

Fed. R. Civ. P. 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979). Amended Complaints filed by *pro se* plaintiffs, as here, are "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007).[10] However, the Amended Complaint must contain more than "legal conclusions, elements of a cause of action,

---

[10] As the court in the *Colorado Action* indicated, Mr. Gibbs appears to have practiced law in the past, and courts "normally do[] not extend the benefits of liberal construction of pro se pleading to licensed (whether presently or formerly) attorneys who choose to represent themselves." *Colorado Action,* 2015 WL 196217, *4 n. 9. (holding that even under the more generous pleading standards afforded non-lawyers, plaintiffs still failed to state a claim).

7

and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Pursuant to Federal Rule of Evidence 201, a court at any stage of the proceedings may "judicially notice a fact that is not subject to reasonable dispute," provided that the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). These facts may be properly considered by the court without converting a motion to dismiss into a motion for summary judgment, as long as the facts are construed in the light most favorable to the plaintiff. *Zak v. Chelsea Therapeutics Int'l. Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). Specifically, when as here, Defendants have raised the defense of *res judicata,* "a court may judicially notice facts from a prior judicial proceeding." *Ashe v. PNC Fin. Servs. Grp., Inc.*, 165 F. Supp. 3d 357, 360 (D. Md. 2015) (quoting *Brooks v. Arthur*, 626 F.3d 194, 199 n.6 (4th Cir. 2010)). The consideration of the affirmative defense of *res judicata* is appropriate at the motion to dismiss stage where "it clearly appears on the face of the complaint...and the res judicata defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F. 3d 521, 524 n.1 (4th Cir. 2000).

## III.   DISCUSSION[11]

### A.  Res Judicata

Defendants Bank of America, Urban and Nationstar argue that all of Plaintiffs' claims against them should be barred by the doctrine of *res judicata* because the District Court of Colorado rejected the same allegations two years ago in the *Colorado Action. See Colorado*

---

[11] Within their response memorandum, Plaintiffs also appear to dispute the removal of this case and this Court's jurisdiction over their claims. These arguments are without merit. Plaintiffs have alleged violations of federal law, including RICO and various civil rights statutes, and state law claims related to these controversies. Pursuant to 28 U.S.C. § 1331, federal courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," along with any state law claims related to the same case or controversy. 28 U.S.C. § 1367. Further, as this case originated in Montgomery County Circuit Court, it was properly removed to this Court, which embraces the jurisdiction where the case was pending. 28 U.S.C. § 1441(a). Thus, jurisdiction in this Court is proper.

*Action*, 2015 WL 196217. While taking the time to file eight motions in this case, including motions for sanctions, default and summary judgment, Plaintiffs never mention the existence of the prior litigation and do not address Defendants' arguments regarding *res judicata*.

"Res judicata, also known as claim preclusion, bars a party from relitigating a claim that was decided or could have been decided in an original suit." *Mbongo v. JP Morgan Chase Bank, N.A.*, No. CIV. PWG-14-1620, 2014 WL 3845443, at *3 (D. Md. Aug. 4, 2014), *aff'd*, 589 F. App'x 188 (4th Cir. 2015) (quoting *Laurel Sand & Gravel Co. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008)). "For res judicata to prevent a party from raising a claim, three elements must be present: '(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action.'" *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (quoting *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990)). "Even claims that were not raised in the original suit may be precluded if they arose from the same transaction or occurrence as those raised in the first suit and were available to the plaintiff at the time of the first suit." *Id.* at 210–11.

In this instance, the relevant prior proceedings occurred in federal court. Thus, Fourth Circuit precedent regarding *res judicata* applies, as "[i]t has been held in non-diversity cases since *Erie v. Tompkins*, that the federal courts will apply their own rule of res judicata." *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946); *see also Andrews*, 201 F.3d at 524 ("Because [plaintiff] brought his first suit against [defendant] in federal court, federal rules of res judicata apply."). This is true even when, as is the case here, the prior litigation included both state and federal claims. *See Mbongo*, 2014 WL 3845443, at *3 (D. Md. Aug. 4, 2014) (quoting *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir.1989) (internal citations omitted) ("[F]ederal, not

state, law determines the preclusive effect of a prior federal judgment," including actions where "a federal court sits in diversity or has some other basis of jurisdiction.").

Having deciding the appropriate law to apply, the Court finds it useful to first address the second element of *res judicata,* by identifying the claims and parties involved in the prior litigation, before determining what issues were decided on the merits. In the *Colorado Action*, the same plaintiffs, Mr. and Mrs. Gibbs, brought claims against three of the same defendants that appear in this litigation, Bank of America, Urban and Nationstar. There, as here, plaintiffs alleged that the defendants conspired to defeat the purpose of the HAMP program by misleading and deceiving borrowers in violation of RICO. As is relevant to these proceedings, plaintiffs also alleged state law claims of breach of contract and unjust enrichment regarding their South Carolina property, and violations of several federal civil rights statutes including 42 USC §§ 1983, 1985 and 1986. As the same parties present in the instant suit brought claims against the same defendants in the prior suit, the second element of *res judicata*, requiring "claims by the same parties or their privies," *Ohio Valley Envtl. Coal.*, 556 F.3d at 210, is satisfied.

Next, the Court must determine whether the first element of *res judicata,* "a judgment on the merits in a prior suit," has been met. *Id.* While ultimately dismissing all claims against all defendants, the court in the *Colorado Action* did not reach the merits on every claim, instead dismissing some on jurisdictional grounds. With respect to the RICO claim, it held that plaintiffs failed to establish the alleged predicate acts of mail or wire fraud, and also failed to allege a RICO injury. *Colorado Action*, 2015 WL 196217, at *6. Specifically, the court opined that as plaintiffs had no right to a HAMP modification, they did not show that "[Bank of America's] actions **deprived someone of money or property**" and thus, "failed to assert colorable contentions of mail or wire fraud," as required to support their RICO claim. *Id.* (emphasis in the

10

original). Additionally, the court held that plaintiffs did not demonstrate that they had suffered a RICO injury, because "they do not allege facts that show that they meet the [HAMP] program's eligibility criteria (much less demonstrate what, if any, modification they would have been entitled to had their application been processed promptly and correctly.)." *Id.* Because the court ruled that plaintiffs had failed to state a RICO claim, that decision operates as a judgment on the merits in a prior litigation. *Id.* (dismissing RICO claim "against all parties").

Because Plaintiffs used RICO as a jurisdictional hook to bring non-Colorado defendants, such as Nationstar and Bank of America, within the jurisdiction of the District Court of Colorado,[12] the court found it lacked personal jurisdiction over Nationstar once the RICO claim had been dismissed. *Id.* at *6-7. However, "dismissal for jurisdictional defects has no res judicata effect." *Hostetler v. United States*, 97 F. Supp. 2d 691, 695 (E.D. Va. 2000) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995)). Thus, while additional claims were leveled against Nationstar in the *Colorado Action*, the Court can only give *res judicata* effect in this litigation to the RICO claims against Nationstar because that was the sole claim adjudicated on the merits.

However, the court, finding that it did have personal jurisdiction over Bank of America, and Urban, a Colorado resident, reached the merits as to the remainder of the claims against those two defendants. *See Colorado Action*, 2015 WL 196217, at *8-11. Thus, the first element of *res judicata*, "a judgment on the merits in a prior suit," *Ohio Valley Envtl. Coal.*, 556 F.3d at

---

[12] As the court in the *Colorado Action* explained, "[w]hen a RICO claim is brought against at least one defendant over whom the Court has personal jurisdiction, the RICO Act permits any summons to be served 'nationwide' over other defendants, essentially subjecting defendants who are foreign to the forum to personal jurisdiction if the 'ends of justice' so require." *Colorado Action*, 2015 WL 196217, at *4 (quoting *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230-31 (10th Cir. 2006)); *see also ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir. 1997) (upholding district court's personal jurisdiction over defendants based on RICO's nationwide service of process provision).

210, is satisfied for all the prior claims brought against Bank of America and Urban, but only for the RICO claim brought against Nationstar.

To establish the third and final element of *res judicata*, the Court must determine whether the present litigation constitutes "a subsequent suit based on the same cause of action." *Id.* The Fourth Circuit employs a "transactional approach" in determining whether or not there is "an identity of claims between the first and second suit" meaning that "res judicata will bar a newly articulated claim if it is based on the same underlying transaction involved in the first suit and could have been brought in the earlier action." *Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 282 (4th Cir. 2016) (internal citations and quotations omitted).

The RICO claim that Plaintiffs bring in this case is virtually identical to the RICO claim they asserted in the prior litigation, even inserting almost the exact same language from their *Colorado Action* complaint into their Amended Complaint in this litigation. *Compare* ECF No. 1 ¶¶ 50-73, *with Colorado Action*, 2015 WL 196217, at Dkt. No. 1 ¶¶ 109-131. However, it is unclear to the Court, and the parties have not addressed, whether Plaintiffs' attempts to modify their South Carolina loan are part of same transaction as any attempts to modify their Maryland loan. Thus, the Court finds that Plaintiffs' RICO claims against Bank of America, Nationstar and Urban regarding the South Carolina loan are part of the "same cause of action," *Ohio Valley Envtl. Coal.*, 556 F.3d at 210, as the prior litigation, but their claims regarding the Maryland loan are not.

A similar dichotomy exists with respect to the prior claims against Bank of America and Nationstar regarding alleged violations of federal civil rights statues and state laws, such as breach of contract and unjust enrichment. While Plaintiffs' instant allegations echo their sparsely plead counterparts regarding the South Carolina loan in the *Colorado Action*, the parties have

offered no argument to the Court as to how those actions form part of the same transaction as any actions taken by Defendants regarding the Maryland loan. *See e.g. Colorado Action*, 2015 WL 196217, at * 9-11. Thus, again, the Court finds that Plaintiffs' claims regarding violations of the federal civil rights statutes and state law claims with respect to the South Carolina loan are part of the same cause of action as the prior litigation, but such claims as applied to the Maryland loan can proceed.

The only new claims that Plaintiffs bring against Bank of America and Urban are claims of civil conspiracy, and a purported violation of the Maryland Consumer Protection Act. It is well established that "[e]ven claims that were not raised in the original suit may be precluded if they arose from the same transaction or occurrence as those raised in the first suit and were available to the plaintiff at the time of the first suit." *Ohio Valley Envtl. Coal.*, 556 F.3d at 210-11 (citation omitted). The Court finds that Plaintiffs' civil conspiracy claims regarding the South Carolina property could have been brought in the prior litigation and in their numerous filings in the present litigation, Plaintiffs failed to put forth any rationale to explain to the Court why these claims could not have been brought earlier.[13]

Therefore, the Court finds that all of Plaintiffs' claims, with the exception of their allegation regarding a violation of the MCPA, against Bank of America and Urban regarding the South Carolina property are barred by *res judicata*. However, all of Plaintiffs' claims are allowed to proceed against Bank of America and Urban as they relate to the Maryland property.

---

[13] Regarding the MCPA, "[i]n Maryland, regulatory statutes are 'generally construed as not having extra-territorial effect unless a contrary legislative intent is expressly stated.'" *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 237 (4th Cir. 2015) (quoting *Consumer Prot. Div. v. Outdoor World Corp.*, 91 Md. App. 275, 287 (Md. Ct. Spec. App. 1992)). While the MCPA has been held to apply to some extra-territorial activity directed towards Maryland residents, it is unclear whether Plaintiffs were residents of Maryland at the time of the alleged incidents. *Id.* (discussing the Maryland state court's holding that a state agency could bring charges under the MCPA regarding false representations sent via mail to Maryland residents.). Because Plaintiffs' allegations clearly fail to state a claim, and will be dismissed, the Court will not resolve the *res judicata* issue as it relates to the MCPA.

Similarly, Plaintiffs' RICO claim against Nationstar is barred by *res judicata* with respect to the South Carolina property, but all other claims against Nationstar may proceed.

## B. RICO[14]

As was done in the *Colorado Action*, the Court will first address Plaintiffs' RICO claims because they form the heart of the allegations at issue.

Pursuant to § 1962(c), "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Claims under § 1962(c) must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985) (footnote omitted). For the reasons discussed below, the Court finds that Plaintiffs have not demonstrated racketeering activity nor a cognizable injury, and the Court will therefore grant the Defendants' respective motions to dismiss as to Plaintiffs' RICO claim under § 1962(c).

A RICO claim requires a showing of "racketeering activity," broadly defined under 18 U.S.C. § 1961(1) to include the commission of several federal statutory and state common law offenses, known as "predicate acts." *See* 18 U.S.C. § 1961(1). To support their § 1962(c) RICO claim, Plaintiffs rely on two predicate acts listed in § 1961(1), mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343). ECF No. 2 ¶ 82. In order to establish the existence of racketeering

---

[14] In their response memorandum, Plaintiffs include some new factual allegations about the Defendants, along with conspiratorial allegations regarding Bill Cosby and references to a prior criminal case against Mr. Gibbs. The Court will not consider any additional factual allegations that Plaintiffs include in these filings because plaintiffs "cannot, through the use of motion briefs, amend the complaint." *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D.Md.1997); *see also Johnson v. SecTek. Inc.*, No. CIV.A. ELH-13-03798, 2014 WL 1464378, at *2 (D. Md. Apr. 14, 2014). Further, any allegations regarding Bill Cosby or Mr. Gibbs' prior criminal case are not germane to the present claims before the Court and thus, will not be considered for a second reason.

14

activity, Plaintiffs must adequately plead the elements of each of these predicate acts. They have failed to do so.

The mail and wire fraud statutes prohibit the use of the mails or interstate wires in furtherance of schemes to defraud. *See* 18 U.S.C. §§ 1341, 1343. To plead mail or wire fraud, a plaintiff must show: (1) a scheme disclosing intent to defraud; and (2) the use, respectively, of the mails or interstate wires in furtherance of the scheme. *See Chisolm v. TranSouth Fin. Corp.,* 95 F.3d 331, 336 (4th Cir.1996) (discussing elements of mail fraud). Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud ... a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, "[w]hen mail and wire fraud are asserted as the predicate acts for a civil RICO claim, the standards of Rule 9(b) apply." *Bhari Info. Tech. Sys. Private Ltd. v. Sriram,* 984 F. Supp. 2d 498, 505 (D. Md. 2013). "A complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud." *Adams v. NVR Homes, Inc.,* 193 F.R.D. 243, 250 (D. Md. 2000) (citations omitted). Furthermore, a scheme to defraud is only actionable if one seeks to defraud a person of something that they had a property interest in. *See e.g. Cleveland v. United States,* 531 U.S. 12, 15 (2000) ("It does not suffice... that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim.").

Here, Plaintiffs allege that Bank of America and its agents did not promptly review their HAMP applications; that Bank of America directed Nadel, Atlantic Law Group and the Montgomery Village Foundation to file frivolous lawsuits against them; and that Bank of America, or other defendants, bribed Maryland and South Carolina government employees to

either ignore these HAMP violations or assist in the frivolous lawsuits. Such allegations fail because they either do not demonstrate that Plaintiffs were defrauded of something that they had a property interest in or they lack the necessary detail to satisfy the particularity requirements of Fed. R. Civ. P. 9(b).

Plaintiffs' claims against Bank of America fail because there is no individual right to a HAMP modification, *see Gibson v. Nationstar Mortg., LLC*, No. GJH-14-03913, 2015 WL 302889, at \*2-3 (D. Md. Jan. 21, 2015), and they have not alleged the existence of a separate contractual obligation that could provide them with a property interest. The Court agrees with the following conclusion reached by the judge in the *Colorado Action*: "[a]t best...Plaintiffs' have pled facts showing that [Bank of America] offers poor customer service and did not comply with the terms of HAMP." *Colorado Action,* 2015 WL 196217, at \*6. However, poor customer service does not constitute fraudulent behavior and "[t]he applicable case law is clear that....a suit that seeks the general enforcement of the HAMP guidelines must fail." *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 618 (D. Md. 2012), *aff'd,* 714 F.3d 769 (4th Cir. 2013). A plaintiff who enters into a Trial Period Plan ("TPP") with a bank may be able to bring a claim asserting a violation of the TPP, because the agreement would have established a privity of contract between the bank and the individual. *Id.* However, while Plaintiffs mention the existence of "trial plan agreements" in their Amended Complaint, they never allege that they specifically entered into one with Bank of America or any of the other Defendants.[15] Simply put, Plaintiffs did not have a property interest in a HAMP modification, and fail to identify any other

---

[15] Attached to their Response to the South Carolina Defendants' Motion to Dismiss, Plaintiffs' attach what appears to be a pre-approved offer for a 2016 Trial Plan Agreement between Nationstar and Barbara Gibbs concerning the South Carolina property. ECF No. 62-1 at 8. However, plaintiffs "cannot, through the use of motion briefs, amend the complaint." *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997). In addition, even if the Court were to consider the document, the existence of a contract in 2016 does not support the contention that a similar contract existed during the time frame of the factual allegations in this case, 2008-2013. Nor does the mere existence of a contract in 2016 demonstrate that Defendants' have somehow breached it.

contract, such as a TPP, that they could have a property interest in. Thus, Plaintiffs' claims against Bank of America are dismissed because Bank of America could not defraud them of something Plaintiffs had no right to.

Similarly, Plaintiffs' allegations against Nadel, Atlantic Law Group and the Montgomery Village Foundation regarding the "frivolous lawsuits" they brought against Plaintiffs are insufficient to state a claim of mail or wire fraud. Plaintiffs make no effort to identify in what specific way such lawsuits are meritless or demonstrate an intent to defraud.[16] Plaintiffs' claims that Bank of America, or other defendants, bribed Maryland and South Carolina government employees to either ignore these violations or assist in the frivolous lawsuits also lack additional details alleging the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Because the Amended Complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement," *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009), to survive a Motion to Dismiss, Plaintiffs' RICO claim must fail.

Finally, with respect to Plaintiffs' more detailed allegations regarding Bank of America's scheme to defraud, even if Plaintiffs could have established that they had a property interest in a HAMP modification, their § 1962(c) would still fail because they have not pled a cognizable RICO injury. To make out a civil action for damages under the RICO statute, a private plaintiff must demonstrate not only that the defendants have violated § 1962, but also that he has been "injured in his business or property by reason of [the alleged] violation of section 1962." 18

---

[16] In fact, the Court takes judicial notice of the fact that the Maryland foreclosure case is closed and an order of judgment of possession has been issued. *See Nadel Action*, Case No. 402900V, at Dkt. No. 39.

U.S.C. § 1964(c). Section 1964(c) requires a plaintiff to make two closely related showings: (1) that he or she has suffered injury to his or her business or property; and (2) that this injury was caused by the predicate acts of racketeering activity that make up the violation of § 1962. *See Nodine v. Textron, Inc.,* 819 F.2d 347, 348 (1st Cir.1987). Here, Plaintiffs have failed to satisfy the injury requirement because they did not include any assertions that they were eligible for the HAMP modifications they allegedly sought for the Maryland mortgage and were therefore denied such modifications because of Defendants' actions and not simply because of their ineligibility. Specifically, they include no statements regarding the size of the mortgage for the Maryland property and whether or not they were current on their payments with respect to the Maryland loan. As discussed above, the judge in the *Colorado Action* inferred that Plaintiffs had likely defaulted on their Maryland loan. *Colorado Action,* 2015 WL 196217, at * 9 n.12. Thus, even accepting all of Plaintiffs' allegations regarding Bank of America as true, Plaintiffs' RICO claim would still fail because they did not assert sufficient facts to show how they were injured by Bank of America's actions.

### C. Breach of Contract

To establish a claim for breach of contract, Plaintiffs must demonstrate that a contract was formed, Defendants breached the contract, and Plaintiff suffered damages as a result. *Antonio v. Sec. Servs. of Am., LLC,* 701 F. Supp. 2d 749, 761 (D. Md. 2010) (citing *Parlette v. Parlette,* 88 Md. App. 628, 640 (Md. Ct. Spec. App. 1991)). "The formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *Pruitt v. Bank of Am., N.A.,* No. CV TDC-15-1310, 2016 WL 337531, at *3 (D. Md. Jan. 28, 2016) (citations omitted). Plaintiffs' breach of contract claims are dismissed

18

because they have failed to put forward sufficient evidence to demonstrate that a contract was formed between themselves and any of the Defendants.

The only facts in the Amended Complaint pointing to the existence of a potential contract are Plaintiffs' allegations regarding their efforts to receive loan modifications from Bank of America for their mortgages. As discussed above, any breach of contract claim against Bank of America regarding the South Carolina property is barred by *res judicata*. Thus, to support a claim of breach of contract, Plaintiffs must allege that a contract was formed between themselves and Bank of America regarding the Maryland property. As discussed above, while Plaintiffs provide specific details regarding the South Carolina loan, they fail to provide any details regarding the Maryland loan; as such it is impossible for the Court to determine which, if any, of the loan modifications discussions that Plaintiffs reference relate to the Maryland loan and which relate to the South Carolina loan. The only facts that Plaintiffs include that could even point to the existence of a contract are a discussion of Plaintiffs' application for loan modifications in 2008. They state that "[Bank of America] approved the modified loans, but only if the Gibbs' paid closing cost[s] of about $30,000. The Gibbs' declined the modified loans." ECF No. 2 ¶ 53. Contract formation requires both offer and acceptance. *Pruitt*, 2016 WL 337531, at *3. Thus, by Plaintiffs' own admission they did not *accept* the purported offer of a loan modification from Bank of America. It is axiomatic that there can be no breach of contract when no contract existed. Thus, Plaintiffs' breach of contract claims are dismissed.

### D. Unjust Enrichment

To state a claim for unjust enrichment, Plaintiffs must allege that "(1) the plaintiff confer[red] a benefit on the defendant; (2) the defendant kn[ew] or appreciate[d] the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances would be

inequitable without the paying of value in return." *Mona v. Mona Elec. Group, Inc.*, 176 Md. App. 672, 712-13 (Md. Ct. Spec. App. 2007).

The only benefit that Plaintiffs allege they conferred on any of the Defendants is the payment of their mortgage payments to Bank of America "in full and on time," ECF No. 2 ¶ 50. As the Court has already observed, this contention is contradicted by Plaintiffs' filings in the *Colorado Action*, where they stated that "[i]n or about November 2009, after being totally frustrated with [Bank of America], Mr. Gibbs returned to South Carolina; we stopped paying the mortgage and have not paid the mortgage in five (5) years." *Colorado Action*, 2015 WL 196217, at *9.[17] However, even assuming that Plaintiffs were current on their Maryland mortgage, they still have failed to demonstrate that Bank of America was unjustly enriched by their mortgage payments. "A claim for unjust enrichment...requires that a plaintiff show, among other facts, that the defendant retained a benefit conferred by the plaintiff 'under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.'" *Bowers v. Bank of Am., N.A.*, 905 F. Supp. 2d 697, 703 (D. Md. 2012) (quoting *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (Md. 2007)). Based on the facts alleged in their Amended Complaint, Bank of America extended a loan to Plaintiffs so that Plaintiffs could purchase their Maryland home, and thus, was entitled to receive Plaintiffs' mortgage payments in return. Therefore, Plaintiffs' unjust enrichment claim fails.

### E. Civil Rights Statutes

In addition to their state law claims, Plaintiffs allege violations of three federal civil rights statutes, 42 U.S.C. §§ 1983, 1985 and 1986, claiming that Defendants actions against them were based on their race.

---

[17] It is unclear whether Plaintiffs meant that they stopped paying their South Carolina mortgage or their Maryland mortgage. *Colorado Action*, 2015 WL 196217, * 9 n.12.

42 U.S.C. § 1983 serves as a vehicle for private parties to enforce their federal constitutional rights against state and local officials, municipalities, and any others who acted under color of state law. *See* 42 U.S.C. § 1983. "To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999). The only state actors that Plaintiffs have sued are the South Carolina Defendants, South Carolina Attorney General Alan Wilson and South Carolina Judge Howe, and the Maryland Attorney General, Brian Frosh. Plaintiffs fail to mention any specific actions taken by the South Carolina Defendants themselves, merely stating that "the HAMP-less Gang paid bribes to South Carolina government employees to institute and maintain their illegal foreclosure practices." ECF No. 2 ¶ 107. Similarly, the only allegations against Maryland Attorney General Frosh are that he entered into a consent agreement with Bank of America, agreeing to turn a "Blind Eye to [Bank of America's] continued conspiracy and racketeering in defrauding HAMP" in return for receiving money from the bank. *Id.* ¶ 24. Such unspecified, conclusory allegations, which do not identify the constitutional rights allegedly infringed upon, are insufficient to state a violation of 42 U.S.C. § 1983 and therefore, Plaintiffs' claims are dismissed.

The other two federal statutes cited by Plaintiffs, 42 U.S.C. §§ 1985 and 1986, do not require state action. "To recover under § 1985(3), a plaintiff must establish the existence of a conspiracy and show 'some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *C & H Co. v. Richardson*, 78 F. App'x 894, 901-02 (4th Cir. 2003) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971)). Pursuant to 42 U.S.C. § 1986, people who knew of the existence of a §1985 conspiracy, had the power to

prevent such actions, and failed to act, can also be held liable by any persons injured by the conspiracy. *See* 42 U.S.C. § 1986. Plaintiffs' sole factual assertion with respect to these claims is their statement that "the described illegal actions are instituted against Plaintiffs based on their RACE: BLACK." ECF No. 2 ¶ 108. As the Court in the *Colorado Action* observed, "the crux of the Plaintiffs' complaint is [that] the Defendants acted on a systematic basis against as many borrowers as possible, solely out of an economic motive, not as the result of any specific racial bias." *Colorado Action*, 2015 WL 196217, at \*9 (dismissing all claims arising under federal civil rights statutes). The Court agrees. Thus, Plaintiffs have failed to state a claim both for civil conspiracy, 42 U.S.C. § 1985 and for a failure to prevent a civil conspiracy, 42 U.S.C. § 1986.

### F. Maryland Consumer Protection Act

Plaintiffs' next cause of action alleges violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101, *et seq.* Plaintiffs do not point to a specific provision that the Defendants allegedly violated, instead citing the entirety of the act itself. ECF No. 2 at 30. The single line devoted to explaining Plaintiffs' MCPA claim merely points the Court towards the section of the Amended Complaint where they discuss their prior RICO allegations. Thus, the Court will assume that Plaintiffs sought to bring a claim pursuant to the MCPA's prohibition on unfair or deceptive trade practices, as that section of the MCPA most closely relates to Plaintiffs' RICO allegations.

To state a claim of unfair or deceptive trade practices under the MCPA, Plaintiffs must allege "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes [them] actual injury." *Stewart v. Bierman,* 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.,* 916 A.2d 257, 277 (Md. 2007)). Here, even assuming that Plaintiffs had satisfied the heightened pleading standards of Fed. R. Civ. P. 9(b) that apply to MCPA

claims, *see Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013), their claim

would still fail because they do not allege that they *relied* on any false and misleading

statements. "To establish reliance under the MCPA, Plaintiffs must plead and prove that the false

or misleading statement substantially induced their choice." *Currie v. Wells Fargo Bank, N.A.*,

950 F.Supp.2d 788, 798 (D. Md. 2013). Here, Plaintiffs have not pleaded sufficient facts from

which one can plausibly infer the existence of any statements or representations made by

Defendants that induced them to take any action or that they "substantially" induced any choice

they made. *See id.* Thus, their MCPA claims are dismissed.

### G. Conspiracy

A claim of civil conspiracy requires Plaintiffs to allege "1) [a] confederation of two or

more persons by agreement or understanding; 2) some unlawful or tortious act done in

furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in

itself illegal; and 3) actual legal damage resulting to the plaintiff." *Windesheim v. Larocca*, 443

Md. 312, 347 (Md. 2015). However, "[c]onspiracy is not a separate tort capable of independently

sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alleco

Inc. v. The Harry and Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 189 (Md. 1995)).

Conspiracy is merely a "matter of aggravation," becoming necessary only "to entitle the plaintiff

to recover in one action against several." *Id.* at 190.

Because the Court has dismissed all of Plaintiffs' claims in this case, there is no

foundational tort to support an allegation of civil conspiracy. *See Clark v. Maryland Dep't of

Pub. Safety & Corr. Servs.*, 247 F. Supp. 2d 773, 777 (D. Md. 2003) (holding that because

"plaintiff has failed to state a claim for any substantive torts, his state law claim for civil

conspiracy must fail."). Accordingly, as Plaintiffs have not adequately established tortious conduct on the part of Defendants, their claim for civil conspiracy must be dismissed as well.[18]

### H.  Plaintiffs' Motion for Leave to File a Second Amended Complaint

The Court must also address Plaintiffs' Motion for Leave to File a Second Amended Complaint, ECF No. 60. After a plaintiff has already amended their pleading once as a matter of course, any further amendments may only be made "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although "[t]he court should freely give leave when justice so requires," *id.*, "the Court may deny as futile a motion to amend a complaint when the proposed complaint would not survive a motion to dismiss." *Dehaemers v. Wynne*, 522 F. Supp. 2d 240, 244 (D.D.C. 2007) (citing *James Madison, Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *see also* 6 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1487 (3d ed., January 2017 update) ("several courts have held that if a complaint as amended could not withstand a motion to dismiss or summary judgment, then the amendment should be denied as futile. In a similar vein, if the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied.").

Here, Plaintiffs already amended their complaint once as a matter of course in the state court proceedings, prior to removal to this Court. *See Gibbs Action,* No. 402900V, at Dkt. No. 17. Furthermore, as evidenced by the opposition motion filed by several Defendants, ECF No. 64, Plaintiffs do not have the written consent of the opposing parties to amend their complaint. Thus, the motion can only be granted by the Court's consent, if "justice so requires." Fed. R.

---

[18]As the Court finds that Plaintiffs' claims against all of the Defendants are insufficient to state a claim, the Court will not address the additional arguments of some of the Defendants that the court lacks personal jurisdiction over them, that Plaintiffs lack standing to bring these claims, or that venue is improper. Further, the Court finds that Defendant Montgomery Village Foundation's request for attorney's fees is premature. Any motion for attorney's fees must be filed via separate motion, within fourteen (14) days of the entry of judgment. Fed. R. Civ. P. 54(d)(2) and Loc. R. 109.2 (D. Md. 2016). Thus, their request for attorney's fees is denied without prejudice.

Civ. Pro. 15(a)(2). As Defendants note, many of the proposed changes in the Second Amended

Complaint are stylistic, such as changing "homeowners" to "Defendants-Plaintiffs" throughout

the document. *See e.g.* ECF No. 60-1 ¶ 4. The only material changes are additional conclusory

allegations that the Attorney Generals of Maryland and South Carolina accepted bribes from the

Defendants, references to an allegedly illegal foreclosure that Nationstar filed in October 2013,[19]

and the inclusion of what appears to be a pre-approved offer for a 2016 Trial Plan Agreement

between Nationstar and Barbara Gibbs concerning the South Carolina property. *Id.* ¶¶ 80, 100,

110. Such allegations are futile as they fail to cure the deficiencies in Plaintiffs' Amended

Complaint, as explained above, and thus, would not survive a motion to dismiss. Because

additional amendment of the complaint would be futile, and would prejudice the Defendants who

have fully responded to Plaintiffs' arguments, Plaintiffs' Motion for Leave to File a Second

Amended Complaint, ECF No. 60, is denied.

## I.   Plaintiffs' Additional Pending Motions[20]

In addition to the dispositive motions filed by the Defendants in this case, Plaintiffs have

filed a series of their own motions. As they either lack merit or are moot, the Court will deny all

of Plaintiffs' pending motions.

On September 26, 2016, Plaintiffs filed a motion for summary judgment. ECF No. 39.

Summary judgment is appropriate if "materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations . . . , admissions,

interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine

---

[19] The Court assumes that this a reference to the foreclosure proceedings that Nationstar initiated against the South Carolina property, already mentioned in the Amended Complaint. ECF No. 2 ¶ 101; *see also* ECF No. 13-1 at 3.

[20] Plaintiffs have additionally filed several documents, including a "pre-hearing brief," ECF No. 40, and an third omnibus Reply to Defendants' pending Motions to Dismiss. ECF No. 47. The Court construes these as attempts to file sur-replies. Because sur-reply memorandums are not permitted to be filed without the permission of the Court, they will not be considered. Loc. R. 105.2(a).

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Because the Court has found that Plaintiffs claims are either barred by *res judicata,* or because they failed to state a claim for relief, Plaintiffs clearly are *not* entitled to judgment as a matter of law. Thus, Plaintiffs' motion for summary judgment is denied.

On October 24, 2016, Plaintiffs filed a motion requesting that the Clerk enter default against Defendant Atlantic Law Group who, at that time, had not responded to Plaintiffs' Amended Complaint. ECF No. 48. Atlantic Law Group argued that the Court should deny Plaintiffs' request because they were not properly served, and thus, their response could not be considered untimely. ECF No. 61. "State law determines whether service while the case was before a state court was proper." *Samuels v. Two Farms, Inc.*, No. CIV A. DKC10-2480, 2010 WL 4103670, at *1–2 (D. Md. Oct. 18, 2010) (citation omitted). Maryland requires service conducted by certified mail to include a request for restricted delivery. Md. Rules 2-121(a)(3). Here, the card that Plaintiffs submit to show that Atlantic Law Group was served on July 18, 2016, clearly shows that the box marked "restricted delivery" was not checked. *See* ECF No. 35-3. Although this may appear to be a minor issue, "Maryland courts seem to take a strict, narrow approach to service" and "treat defective service of process [as] a jurisdictional defect" that cannot be cured with actual knowledge. *Samuels*, 2010 WL 4103670, at *2 (citation omitted) (alteration in the original). As Atlantic Law Group was never properly served, their response could not be untimely. Thus, the Court denies Plaintiffs' request for the Clerk's entry of default against Atlantic Law Group. Plaintiffs also filed two additional Motions for Clerk's Entry of Default, requesting that the Clerk enter defaults as to unspecified Defendants, ECF No. 65, and the majority of the named Defendants, ECF No. 71. These motions appear to be based on

Defendants' failure to respond to Plaintiffs' November 10, 2016 Motion for Leave to File a Second Amended Complaint. However, because the Court did not grant this motion, no response was required of Defendants. Thus, Plaintiffs' motion is denied.

Plaintiffs have also filed three motions, which are partially captioned as "motion for sanctions," ECF Nos. 53, 70 and 74, but which actually consist of a combination of arguments that the Court has already rejected regarding the removal of the case, and reiterations of the same conspiratorial, conclusory statements regarding the actions of the Defendants prior to this case. As Plaintiffs have failed to make a factual showing that the Defendants have filed motions that would violate Fed. R. Civ. P. 11(b)'s restrictions on submissions filed for "any improper purpose," or have "multiplie[d] the proceedings in any case unreasonably and vexatiously" that would justify the imposition of costs or attorney's fees pursuant to 28 U.S.C. § 1927, Plaintiffs' requests are denied.[21]

---

[21] Nadel and the South Carolina Defendants' motions requesting to stay the case and for extensions in their filings deadlines, ECF Nos. 45, 46 and 52, are denied as moot.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant Defendants' Motions to Dismiss, and deny Plaintiffs' pending motions. A separate Order, detailing the specific disposition of each motion, follows.

Dated: March 31, 2017

GEORGE J. HAZEL
United States District Judge