FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 NOV 13 P 4: 50

CLERK'S OFFICE
AT GREENBELT

BY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

BARBARA A. GIBBS, *et al.*,

  Plaintiffs,

v.            Case No.: GJH-16-2855

BANK OF AMERICA, N.A., *et al.*,

  Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This action consists of a counterclaim that Plaintiffs filed in response to Defendants' state foreclosure action, in which Plaintiffs allege that Defendants are liable for unjust enrichment, breach of contract, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"), civil conspiracy, and violations of the Maryland Consumer Protection Act. ECF No. 2. Presently pending before the Court is Plaintiffs' Motion to Reconsider the Court's March 31, 2017 opinion, ECF No. 75, which granted Defendants' Motions to Dismiss, ECF No. 77, and Plaintiffs'[1] Motion to Reopen Case and Remand to State Court, ECF No. 80. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Plaintiffs' motions are granted.

### I. BACKGROUND

Between 2005 and 2006, Plaintiffs purchased two homes, one in Florence, South Carolina and one in Gaithersburg, Maryland. ECF No. 2 ¶ 50. Plaintiffs state that they "financed the building of their South Carolina home with a one year construction loan[,] purchased with a

---

[1] Plaintiffs' Motion to Reopen Case and Remand to State Court, ECF No. 80, is captioned incorrectly and refers to Bank of America, *et al.*, as Plaintiffs and the Gibbs as Defendants.

30-year fixed rate mortgage from [Bank of America.]." *Id.* Although not alleged by the Plaintiffs, the judge in a prior, almost identical case that Plaintiffs brought in the District of Colorado stated that "it is clear that *both* of the Plaintiffs' mortgages were with [Bank of America]." *See Gibbs-Squires v. Urban Settlement Servs.*, No. 14-CV-00488-MSK-CBS, 2015 WL 196217, at *9 n.12 (D. Colo. Jan. 14, 2015), *aff'd*, 623 F. App'x 917 (10th Cir. 2015) (emphasis in original) (hereinafter, "the *Colorado Action*").[2]

Beginning in May of 2008, Plaintiffs sought loan modifications from Bank of America. ECF No. 2 ¶ 53. Bank of America initially approved Plaintiffs' request for loan modifications, conditioned upon their payment of $30,000 in closing costs. *Id.* Plaintiffs declined the loan modifications because any savings from a reduction in their monthly mortgage payments would be erased by the new requirement to pay closing costs. *Id.* Plaintiffs continued, unsuccessfully, to request alternative loan modifications from Bank of America until 2012. *Id.* ¶¶ 55-70. At that point, they were informed by Bank of America that their mortgages had been sold to Nationstar. *Id.* ¶ 70.

Plaintiffs complain about their treatment by Bank of America employees while they sought loan modifications, stating that they were repeatedly misled about their qualifications for a federal program known as the Home Affordable Modification Program ("HAMP"), which aims to provide mortgage modifications to eligible borrowers facing foreclosure, and were often told to resubmit documents that they had already submitted. *Id.* ¶¶ 5-6, 50-73. These allegations serve as the basis for what Plaintiffs describe as a violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c), in which Bank of America,

---

[2] While Defendant Bank of America never affirmatively states that it owned both mortgages, it does not dispute this contention.

2

Nationstar, and other defendants, conspired to defeat the purpose of the HAMP program by misleading and deceiving borrowers. ECF No. 2 ¶¶ 2, 5-6, 9-13; *see also id.* ¶¶ 77-98.

Plaintiffs also allege that Bank of America directed Defendants Nadel, Atlantic Law Group and Montgomery Village Foundation, to file frivolous lawsuits against them, with the goal of "stealing" their homes. *Id.* ¶ 24.[3] They further allege that the Maryland Attorney General entered into a consent agreement with Bank of America, agreeing to turn a "Blind Eye to [Bank of America's] continued conspiracy and racketeering in defrauding HAMP" in return for receiving money from the bank. *Id.* ¶ 24. Finally, Plaintiffs claim that Defendants have "paid bribes to South Carolina government employees to institute and maintain their illegal foreclosure practices." *Id.* ¶ 107.

Together with their RICO claim, Plaintiffs bring seven additional claims against the Defendants, who they often refer to generally as "Defendants" or the "HAMP-less gang." *Id.* ¶ 23. First, they allege state law claims of breach of contract, unjust enrichment, conspiracy and violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101, *et seq. Id.* ¶¶ 49-73, 99-109. Plaintiffs also allege violations of three federal civil rights statutes, 42 U.S.C. §§ 1983, 1985 and 1986, claiming that Defendants' "illegal actions were instituted against Plaintiffs based on their RACE: BLACK." *Id.* ¶ 108.

On March 26, 2015, Nadel, on behalf of Nationstar, instituted foreclosure proceedings against Plaintiffs regarding the Maryland property in Maryland state court. *See Nadel* Action,

---

[3] Plaintiffs do not provide any information regarding the roles of these Defendants. For the reader's convenience, the Court makes the following observations of their roles based on the uncontested statements in Defendants' briefs. Jeffrey Nadel was counsel for Nationstar in the foreclosure proceedings for the Maryland property. *See* ECF No. 13-1 at 5; *see also Nadel v. Gibbs,* Case No. 402900V (Mont. Co. Cir. Ct. 2015) (hereinafter, the "*Nadel* Action"). Atlantic Law Group was foreclosure counsel for Wells Fargo, who purchased the Maryland property at the foreclosure sale. *See Nadel Action*, Case No. 402900V, at Dkt. No. 39; *see also* ECF No. 66-1 at 1-2. Montgomery Village Foundation notes that their "limited interaction with the Gibbs has been to take legal action . . . to collect unpaid assessments from [Plaintiff] Barbara Gibbs, owed to [Defendant] pursuant to a Declaration of Covenants governing [the Maryland property]." ECF No. 25-1 at 2.

3

Case No. 402900V, at Dkt. No. 1. On June 2, 2015, Plaintiffs filed a counter-claim in that case asserting the claims discussed above, *id.*, at Dkt. No.12, which was separated from the foreclosure case and became the initial complaint in a new case. *See Gibbs v. Bank of America, N.A.*, Case No. 405624V (Mont. Co. Cir. Ct. 2015), Dkt. No 1 (hereinafter, the "*Gibbs* Action").[4] On August 12, 2016, Defendants Bank of America and Nationstar removed the *Gibbs* Action to this Court. ECF No. 1.

After removal, each of the named Defendants filed a motion to dismiss, arguing that Plaintiffs' claims were barred on multiple grounds including *res judicata*, lack of subject matter jurisdiction, improper venue, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted. *See* ECF Nos. 10, 13, 17, 25, 31, 57, and 66. Plaintiffs also filed their own motions, including a Motion for Summary Judgment on all claims, ECF No. 39.

On March 31, 2017, the Court granted Defendants' Motions to Dismiss, and denied Plaintiffs' motions. ECF No. 75. In a footnote, the Court acknowledged that the parties disagreed over whether the removal of this case from state court was proper, but concluded that the case was "properly removed to this Court." *Id.* at 8 n.11. On April 10, 2017, Plaintiffs filed a Motion for Reconsideration, ECF No. 77, which Defendants Opposed, ECF No. 78, and to which Plaintiffs subsequently replied, ECF No. 79. On October 20, 2017, Plaintiffs filed a Motion to Reopen the Case and Remand it to state court, ECF No. 80.

## II. STANDARD OF REVIEW

A motion for reconsideration filed within 28 days of the underlying order is governed by Federal Rule of Civil Procedure 59(e). Courts have recognized three limited grounds for granting a motion for reconsideration pursuant to Rule 59(e): (1) to accommodate an intervening change

---

[4] The Maryland state court dockets for the *Gibbs* and *Nadel* Actions can be accessed at http://casesearch.courts.state.md.us (last visited March 28, 2017).

4

in controlling law; (2) to account for new evidence; or (3) to correct clear error of law or prevent manifest injustice. *See United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (citing *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)), *cert. denied*, 538 U.S. 1012 (2003). A Rule 59(e) motion "may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pacific Ins. Co.*, 148 F.3d at 403 (quoting 11 Wright, *et al.*, Federal Practice and Procedure § 2810.1, at 127–28 (2d ed. 1995)). *See also Sanders v. Prince George's Public School System*, No. RWT 08-cv-501, 2011 WL 4443441, at *1 (D. Md. Sept. 21, 2011) (a motion for reconsideration is "not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request"). "In general, 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Id.* (quoting Wright, *et al.*, *supra*, § 2810.1, at 124).

This Court has noted that "[n]either Rule 59(e), nor Local Rule 105.10 (providing the deadline for a motion for reconsideration), contains a standard for the application of Rule 59(e) and the Fourth Circuit has not identified such a standard." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 320 (D. Md.), *aff'd*, 584 F. App'x 135 (4th Cir. 2014). Thus, this Court has previously looked to the "widely cited case" of *Above the Belt, Inc. v. Bohannan Roofing, Inc.*, 99 F.R.D. 99 (E.D.Va.1983), for its reasoning that a "motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bey*, 997 F. Supp. 2d. at 320.

## III. DISCUSSION

Plaintiffs, in both Motions, effectively ask the Court to reconsider its dismissal of this case, reopen the case and remand it to state court. Federal courts are courts of "limited jurisdiction," and "can only exercise the jurisdiction given by act of Congress," *The Hine*, 71 U.S. 555, 559 (1866), such as in diversity actions, 28 U.S.C. § 1332, or in cases involving a federal question, 28 U.S.C. § 1331. It is well-established law that § 1331 federal question jurisdiction "is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law," *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908)); as such, a counterclaim based on federal law does not "establish [federal question] jurisdiction," *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 831 (2002). As it is a jurisdictional issue, a challenge to a federal court's subject-matter jurisdiction to hear a case may be made "at any time," and cannot be waived by the parties. *Tropical Winds Joint Venture v. Coker Builders, Inc.*, 884 F.2d 1390 (4th Cir. 1989). Pursuant to 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Although the Court is unaware of an instance in which the Fourth Circuit has opined on the issue, some Circuits have held that even after a final judgment is issued, a district court is still under an obligation to consider a challenge to its subject-matter jurisdiction. *In re Carter*, 618 F.2d 1093, 1098 (5th Cir. 1980) ("Even after entry of final judgment, the constitutional balance of policies that underlies the Article III grant of judicial power impels the vacation of that judgment and remand to the state court having jurisdiction when it is determined that the federal court was without power to act because of a lack of subject matter jurisdiction over a

removed case."); *see also Woods v. Wal-Mart*, 124 F.3d 219 (10th Cir. 1997); *Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991).

In evaluating Plaintiffs' Motion to Reconsider, the Court first considers whether it "patently misunderstood" the parties' arguments. Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." "On a motion to remand, the court must 'strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court,' indicative of the reluctance of federal courts 'to interfere with matters properly before a state court.'" *Rizwan v. Lender Servs. Inc.*, 176 F. Supp. 3d 513, 515 (D. Md. 2016) (quoting *Barbour v. Int'l. Union*, 640 F.3d 599, 615 (4th Cir.2011) (en banc), *abrogated by statute on other grounds by* 28 U.S.C. § 1446(b)(2)(B)). In their Opposition to Defendants' Motion to Dismiss, Plaintiffs argued that "Gibbs did not file this law suit: it was filed by the [Defendants] in Maryland Circuit Court and removed to this Court by the [Defendants]" and "Plaintiffs are not permitted to remove a state case to federal court." ECF No. 62-1 at 2. At the time, the Court did not give weight to this argument, as it understood that *Defendants* were the ones who removed the case to federal court, which is permissible. The Court held that removal was proper as "this case originated in Montgomery County Circuit Court, [and] it was properly removed to this Court." ECF No. 75 at 8.

In reviewing Plaintiffs' Motion for Reconsideration and the state court docket, however, the Court became aware of the fact that Plaintiffs' claims were not filed as an independent suit in state court, but were administratively separated "for litigation purposes" only pursuant to a Montgomery County Circuit Court Administrative Order (the "Administrative Order"). *Gibbs*

7

Action, Dkt. No. 2. The Court initially misunderstood this fact, which was not sufficiently explained in the parties' briefings. The Court thus considers whether this fact changes its prior ruling.

This Court has previously examined the effect of the Montgomery County Circuit Court's Administrative Order on removed counter- or cross-complaints in foreclosure proceedings, and found that removal is improper. In *Wittstadt v. Reyes*, 113 F. Supp. 3d 804 (D. Md. 2015)—which was not cited by the parties—Judge Chasanow was confronted with the same issue presented here. There, a foreclosure claim was filed in Montgomery County Circuit Court, and the defendant filed a counter-claim against the plaintiff. *Id.* at 805. Pursuant to the Administrative Order, the court clerk opened a new case number for the counter-claim, and the counter-claim was subsequently removed. *Id.* In holding that removal was improper, Judge Chasanow explained that the Administrative Order did not actually convert the counter-claim into a new case; rather, "the order merely effectuates a bifurcation of the case permitting the court to try the foreclosure and counterclaim separately if necessary . . . ." *Id.* at 807. As such, the "original foreclosure proceeding . . . did [not] become removable when . . . the counterclaim [was] filed" because "[a] federally-based counterclaim by an original defendant is not eligible to serve as the basis for removal on federal question grounds." *Id.* at 806. *See also Kelly v. JP Morgan Chase Bank, Nat'l Ass'n*, No. CV TDC-15-1115, 2015 WL 9183428, at *2 (D. Md. Dec. 17, 2015) (Chuang, J., holding same).

This case is factually identical to *Wittstadt*, whose reasoning the Court finds persuasive. Here, the court clerk filed Plaintiffs' counter-claims separately pursuant to the same Administrative Order that was relied upon in *Wittstadt*, instructing that counterclaims should be "severed for the purpose of litigation." *Gibbs* Action, Dkt. No. 2. Here too, the Administrative

8

Order "merely effectuates a bifurcation of the case permitting the court to try the foreclosure and counterclaim separately if necessary." As the original complaint was a state foreclosure action and did not raise any federal questions, the filing of Plaintiffs' counter-claims did not make the action removable.[5] As such, the Court concludes that it misunderstood the parties' arguments as to remand, and that the Court's misunderstanding impacted its prior ruling. The Court therefore grants Plaintiffs' Motion for Reconsideration, finds that the Court does not have subject-matter jurisdiction over Plaintiffs' claims, and remands the case to the Circuit Court for Montgomery County.[6]

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reconsideration, ECF No. 77, and Motion to Reopen Case and Remand to State Court, ECF No. 80, are granted, and the case is remanded to the Circuit Court for Montgomery County. A separate Order shall issue.

Date: November 13, 2017

GEORGE J. HAZEL
United States District Judge

---

[5] The Court notes that it also would not have had diversity jurisdiction over the original foreclosure action. From the original foreclosure action's docket, it is apparent that Maryland citizens were both plaintiffs and defendants. See Nadel Action; ECF No. 2 ("Barbara A. Gibbs is a resident of the state of Maryland"). See also 28 U.S.C. § 1332.

[6] The Court notes that even if it did not grant Plaintiffs' Motion for Reconsideration, it would still be compelled to remand the case upon concluding that it does not have subject-matter jurisdiction, even after issuing what is undeniably a final judgment. See In re Carter, 618 F.2d 1093, 1097 (5th Cir. 1980) ("Even after entry of final judgment, the constitutional balance of policies that underlies the Article III grant of judicial power impels the vacation of that judgment and remand to the state court having jurisdiction when it is determined that the federal court was without power to act because of a lack of subject matter jurisdiction over a removed case"); Woods v. Wal-Mart, 124 F.3d 219 (10th Cir. 1997) ("Defendants contend the final judgment on the merits deprived the district court of jurisdiction to consider any subsequent remand of the now-dismissed state claims. On the contrary, so long as the remand motion was premised on the district court's lack of jurisdiction over the removed action, the assertedly void judgment would present no obstacle to the relief requested.").

9